[No. B139450. Second Dist., Div. Two. June 28, 2001.]

BARRY A. FISHER, as Receiver, etc., Plaintiff and Respondent, v. RONALD GENE GIBSON, Defendant and Appellant.

## COUNSEL

Cole & Loeterman and Dana M. Cole for Defendant and Appellant.

Saltzburg, Ray & Bergman and Paul T. Dye for Plaintiff and Respondent.

## OPINION

**DOI TODD, J.**—The defendant appeals from a summary judgment entered in favor of the plaintiff. Appellant's primary contention is that the court should not have heard the summary judgment motion against him but should have denied or continued the motion because he faced a parallel criminal investigation and was entitled to invoke his Fifth Amendment privilege against self-incrimination. We affirm because plaintiff proved his case and defendant failed to establish the right to a continuance under Code of Civil Procedure section 437c, subdivision (h).

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves an investment scheme in which hundreds of "investor/ lenders" were misled into providing over $90 million to a company hereafter referred to as PCO.[1] PCO represented itself to be in the business of purchasing "viaticals," which is a transaction in which a terminally ill person's life insurance benefits are purchased for a discounted amount of cash. The owner of the policy obtains immediate cash and the investor has the right to a larger payment in the future. Appellant Ronald Gene Gibson's company located investors and provided "marketing" services to PCO.

---

[1]The plaintiff in this case is Barry A. Fisher, the court appointed receiver for Personal Choice Opportunities and PCO, Inc., hereafter referred to collectively as PCO.

The investors were told their funds would remain in escrow until the existence of the actual policy was confirmed by an independent escrow company. But the escrow company was also a part of the scheme and funds were transferred to PCO without the purchase of any policies. As such, no future revenue stream was established from which to pay the investors interest or to repay their principal investment as promised. Early "investors" received some periodic interest and principal payments from PCO, but these payments actually came from subsequent loans or investments.

Substantial amounts of the invested funds were diverted to one of the principals of PCO or paid as "commissions" to entities such as appellant's company. Without purchasing the policies as revenue generating assets there was no apparent way for PCO to continue to pay "commissions," interest on funds loaned, or to return loaned principal, absent continued outside investments or loans, resulting in a fraudulent cycle similar to a "Ponzi" scheme.

In the end, disputes and litigation between PCO, the escrow company, and appellant's company brought the scheme to the attention of authorities. A grand jury in New York indicted some of the principals involved in PCO, who ultimately pleaded guilty and provided information on the workings of the scheme. The California Department of Corporations commenced an action against PCO that led to the appointment of Mr. Fisher as receiver for PCO. The receiver sued appellant and his company, alleging that PCO had transferred to them over $2 million in funds supplied by the defrauded investors.

## 1. *Receiver's Motion for Summary Judgment or Summary Adjudication.*

The receiver moved for summary judgment, or alternatively summary adjudication, on causes of action seeking to set aside various payments to appellant by PCO as fraudulent transfers under the Uniform Fraudulent Transfer Act. (Civ. Code, §§ 3439.04, subds. (a) & (b), 3439.05.)[2] As relevant here, receiver sought to set aside transfers to appellant based on section 3439.04, which provides, in part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows: [¶] (a) With actual intent to hinder, delay, or defraud any creditor of the debtor. [¶] (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: [¶] (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or

---

[2]All further statutory references are to the Civil Code unless otherwise specified.

transaction; or [¶] (2) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."

The parties agree that a statutory defense to the receiver's claim is set forth in section 3439.08, which provides, in part: "(a) A transfer or an obligation is not voidable under subdivision (a) of Section 3439.04, against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee. [¶] (b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor . . . the creditor may recover judgment for the value of the asset transferred, as adjusted under subdivision (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against the following: [¶] (1) The first transferee of the asset or the person for whose benefit the transfer was made. [¶] (2) Any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee."

Evidence in support of the motion included documentation of the transfers at issue, transcripts of the guilty pleas of the PCO participants, and the declaration of an expert accountant who had reviewed the financial records of the companies and individuals involved. In addition, receiver introduced evidence to show the amount of funds PCO obtained from the investors, the amount of those funds PCO paid as "commissions" to appellant's company, and the amount of commissions transferred to appellant either from his company or directly from PCO. Receiver filed a lengthy and detailed separate statement with references to the specific evidence supporting summary adjudication.

The motion expressly recognized the possibility that appellant would raise the issue of his privilege against self-incrimination.[3] In an effort to avoid being prevented from obtaining summary adjudication by appellant's assertion of the privilege, receiver expressly agreed not to proceed on the basis of appellant's knowledge of the scheme, his intent or bad faith, or his responsibility as an alter ego of his company. Instead, the motion focused on PCO's intent to hinder or defraud creditors and appellant's "indisputable failure to give value for the transfers."

Receiver argued that there were no triable issues as to whether PCO intended to defraud or hinder its creditors, or whether its assets were unreasonably small in relation to the transfers, or that PCO was insolvent,

---

[3]The record discloses that proceedings had previously been continued based on defendant's assertion that there was an ongoing criminal investigation of him.

and no triable issue as to whether appellant, participating in the scheme wittingly or unwittingly, could be considered to have given reasonably equivalent value so as to cut off the right to set aside the transfers.

## 2. *Appellant's Response to the Motion.*

Appellant opposed the motion but submitted no supporting evidence of any kind. Appellant's memorandum of points and authorities and his response to the separate statement contained numerous arguments to the effect that he should not be required to substantively oppose the motion because he was the target of a continuing grand jury investigation and was therefore entitled to assert his constitutional privilege against self-incrimination. He argued that his assertion of the privilege prevented him from introducing evidence on various issues pertinent to the receiver's claims, and the motion should be denied, stayed or continued. Appellant also attacked the receiver's evidence from various angles, and presented arguments against summary adjudication based on provisions of the Uniform Fraudulent Transfer Act.

## 3. *The Trial Court's Ruling.*

At the hearing on the motion, the court commented that there was no evidence appellant was the target of any criminal probe. Concluding that appellant had not satisfied the requirements of Code of Civil Procedure section 437c, subdivision (h), that he supply evidence to demonstrate that he was the target of a criminal investigation and that "facts essential to justify opposition may exist, but cannot, for reasons stated, then be presented," the court proceeded to rule on the motion.

In its order granting summary adjudication, the court stated: "[Appellant] did not proffer any evidence in opposition to the Motion. [Appellant] relied instead on his bare assertion of the Fifth Amendment privilege against self-incrimination, on legal arguments and on objections to certain portions of [the receiver's] evidence. The Court overrules all of [appellant's] evidentiary objections, most of which were not framed in compliance with [California Rules of Court], [r]ule 345. The Court also rejects [appellant's] privilege assertion because [appellant] did not supply any evidence that he is the target of a criminal investigation. Code of Civil Procedure [section] 437c, [subdivision] (h) requires that a party opposing a motion for summary judgment must supply affidavits showing [that] 'the facts essential to justify opposition may exist, but cannot, for reasons stated, then be presented.' No such affidavit was supplied."

The court's order detailed the evidence and the implications of the evidence, finding that the receiver had established the elements of the claim.

The court found no triable issue of material fact as to whether the transfers to appellant were voidable fraudulent transfers under section 3439.04, subdivisions (a) and (b), and section 3439.05, and no triable issue whether appellant had provided reasonably equivalent value so as to give rise to a potential statutory defense to the action under section 3439.08. Receiver's motion was granted, and judgment entered against appellant, from which he appeals.

## CONTENTIONS

Appellant makes only two arguments on appeal: (1) that he "asserted his constitutional and statutory right against self-incrimination in good faith sufficient to warrant a stay of the receiver's civil lawsuit and thereby preclude a hearing on the motion for summary judgment pending resolution of any potential federal criminal action," and (2) that the trial court erred in requiring him to show he gave reasonably equivalent value to the initial transferor (PCO) rather than to his own company, from which he received the majority of the funds in question.

## DISCUSSION

1. *Procedural Requirements for Summary Adjudication; Appellate Review.*

A plaintiff is entitled to summary adjudication of a cause of action if it can be established that there is no defense to that claim. (Code Civ. Proc., § 437c, subd. (f)(1).) This burden is met if the plaintiff has proved each element of the cause of action, at which point the burden shifts to the defendant to show that a triable issue of material fact exists as to that cause of action or a defense. (Code Civ. Proc., § 437c, subd. (o)(1).)

It is necessary for the motion and any opposition to be supported by admissible evidence, in the form of affidavits, declarations, admissions, answers to interrogatories, depositions or matters judicially noticed. (Code Civ. Proc., § 437c, subds. (b) & (d).) The court must then rule on the motion based on all the papers submitted. (Code Civ. Proc., § 437c, subd. (c).)

■ Our review of the trial court's ruling is similarly limited to the facts presented in documents submitted to the trial court. The appellate court exercises its independent judgment of the undisputed facts disclosed by the parties' papers. (*Monteleone v. Allstate Ins. Co.* (1996) 51 Cal.App.4th 509, 514-515 [59 Cal.Rptr.2d 48].)

■ If a defendant is unable to meet the burden of going forward to demonstrate a triable issue of material fact at the time he is required to

respond due to his election to assert his privilege against self-incrimination, the defendant can seek to postpone the date on which he would ultimately be required to shoulder that burden. As provided in Code of Civil Procedure section 437c, subdivision (h), "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication or both that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

The determination of whether to grant a continuance is within the discretion of the court, but a continuance is mandated by Code of Civil Procedure section 437c, subdivision (h) upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition. (*American Continental Ins. Co. v. C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280 [241 Cal.Rptr. 466].) "The code section specifically requires a good faith showing by affidavit. It is not enough to merely raise the issue in the opposition memorandum." (*Ibid.*)

The trial court concluded that appellant had not demonstrated by way of affidavit that facts essential to justify opposition might exist but could not then be presented. As discussed below, we agree. That being the case, the trial court properly proceeded under Code of Civil Procedure section 437c, subdivision (c) to consider "all of the evidence set forth in the papers" in the process of "determining whether the papers show that there is no triable issue as to any material fact."

Appellant makes no argument on appeal that the receiver's evidence in support of the motion for summary adjudication was insufficient to shift the burden to appellant to show that a triable issue of fact existed as to the pertinent causes of action and affirmative defenses. Indeed, appellant's arguments implicitly concede that without any opposing evidentiary showing, the evidence set forth in the papers was sufficient to shift the burden to him to demonstrate the absence of a material triable issue.

*2. Appellant Did Not Demonstrate That His Assertion of the Privilege Against Self-incrimination Precluded Timely Substantive Opposition to the Summary Judgment Motion.*

■ "Courts recognize the dilemma faced by a defendant who must choose between defending the civil litigation by providing testimony that may be incriminating on the one hand, and losing the case by asserting the constitutional right and remaining silent, on the other hand. [Citation.]" (*Fuller* v. *Superior Court* (2001) 87 Cal.App.4th 299, 306 [104 Cal.Rptr.2d

525].) "Where . . . a defendant's silence is constitutionally guaranteed, the court should weigh the parties' competing interests with a view toward accommodating the interests of both parties, if possible." (*Pacers, Inc. v. Superior Court* (1984) 162 Cal.App.3d 686, 690 [208 Cal.Rptr. 743].) The rationale of decisions imposing a stay of civil discovery until disposition of a related criminal matter "is based on Fifth Amendment principles as well as the inherent unfairness of compelling disclosure of a criminal defendant's evidence and defenses before trial. Under these circumstances, the prosecution should not be able to obtain, through the medium of the civil proceedings, information to which it was not entitled under the criminal discovery rules. [Citation.] Here, although petitioners are not criminal defendants, they are nevertheless threatened with criminal prosecution. To allow the prosecutors to monitor the civil proceedings hoping to obtain incriminating testimony from petitioners through civil discovery would not only undermine the Fifth Amendment privilege but would also violate concepts of fundamental fairness." (*Ibid.*)

■ Citing these principles, appellant argues that the trial court erred in proceeding to decide the receiver's motion. Yet appellant's opposition to the motion in the trial court, and his appeal, are based on the assumption that so long as the defendant in a civil action faces potential criminal prosecution arising out of the same basic facts as those involved in the civil case, protection of the appellant's constitutional privilege against self-incrimination automatically precludes summary adjudication. That assumption is mistaken.

A similarly broad argument was rejected in *James Talcott, Inc. v. Short* (1979) 100 Cal.App.3d 504 [161 Cal.Rptr. 63], disapproved on other grounds in *Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 744 [29 Cal.Rptr.2d 804, 872 P.2d 143] (*Talcott*), where civil defendants asserted the privilege due to a parallel federal criminal investigation into the business affairs which formed the basis for the civil lawsuit. The defendants contended that in light of their assertion of the privilege and the continuance provisions of Code of Civil Procedure section 437c, subdivision (h), partial summary judgments were entered against them prematurely: "These defendants suggest that in view of the pendency of the federal criminal investigation of their business affairs . . . a more appropriate and fairer procedure would have been either to deny plaintiffs' motions for partial summary judgments or to continue the motions and advise these defendants that they would be prevented from offering any evidence personally at trial regarding the matters as to which they had denied plaintiffs discovery on the basis of their constitutional privilege against self-incrimination, unless they waived that privilege a reasonable specified time before trial. . . . [¶] This position

assumes, however, that once the constitutional privilege against self-incrimination is asserted by a defendant in civil litigation, the case may be disposed of only through a full-blown trial. We do not think that this juristic consequence should automatically attach in all such cases." (*Talcott, supra*, at p. 509.) The appellate court proceeded to affirm the partial summary judgments, noting the failure of the defendants to seek to resolve the dilemma by at least attempting "to obtain from the federal prosecutor a limited use immunity for any evidence they wished to offer in this litigation in an effort to defeat plaintiffs' motion for partial summary judgments. True, under our law, it would have been entirely up to him whether to grant the request. [Citation.] But it was incumbent upon them to make this request since the burden of producing evidence in opposition to the motion rested on them and them alone. They should not be permitted to reserve their defensive evidence until trial and thereby preclude their adversaries from obtaining partial summary judgments against them without trial. [Citation.]" (*Id.* at pp. 509-510, fn. omitted.)

Appellant could not merely assert the privilege against self-incrimination and thereby bring the civil action to a halt. ▮ "Evidence Code section 940 excludes from discovery information which may tend to incriminate a party. [Citation.] This principle has been construed to allow assertion of the privilege against self-incrimination ' "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." [Citations.]' [Citation.] Privileged matters thus lie beyond the reach of discovery and trial courts may not compel individuals to make responses that they reasonably believe could tend to incriminate them or subject them to criminal prosecution. [Citations.] [¶] *However, a party is not entitled to decide for him or herself whether the privilege against self-incrimination may be invoked.* ' "Rather, this question is for the court to decide after conducting '*a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore*, whether or not the privilege is well founded.' [Citation.]" [Citations.]' [Citation.] This principle applies in both civil and criminal proceedings, and under both the federal and state Constitutions. [Citations.] Only after the party claiming the privilege objects with specificity to the information sought can the court make a determination about whether the privilege may be invoked. [Citation.] [¶] Consequently, a civil defendant does not have the absolute right to invoke the privilege against self-incrimination. [Citation.]" (*Fuller v. Superior Court, supra,* 87 Cal.App.4th at pp. 305-306, first italics added, fn. omitted.)

In other words: "A witness cannot arbitrarily refuse to testify. There must exist in fact a real danger that the answer would have a tendency to be incriminating. Insofar as possible the trial court must determine if such real

danger exists. If the witness swears under oath that the answer might tend to incriminate him, he should be allowed great latitude and the court should sustain his claim of privilege unless it is clear that the answer could have no tendency to incriminate. [Citations.]" (*In re Leavitt* (1959) 174 Cal.App.2d 535, 537-538 [345 P.2d 75].) As stated by another court in the context of a discovery dispute: "It is clear that the [civil defendants facing parallel criminal prosecution] may not invoke a blanket privilege against self-incrimination with respect to the whole deposition. [Citations.] The trial court must be given the opportunity to determine whether particular questions posed in the depositions would elicit answers that 'support a conviction' or that 'furnish a link in the chain of evidence needed to prosecute the witness' [citation], and which may thus be subject to constitutional protection." (*Fuller v. Superior Court, supra*, 87 Cal.App.4th at p. 308.)

Even a demonstrably proper assertion of the privilege by a civil defendant will not end the inquiry under Code of Civil Procedure section 437c, subdivision (h). A party opposing summary judgment may be able to demonstrate the existence of a triable issue of material fact through the moving party's own evidence or witnesses, or from other types or sources of evidence available to the defendant to which the privilege against self-incrimination would not extend. In those cases there can be no demonstration that facts "essential to justify opposition may exist, but cannot . . . then be presented." (Code Civ. Proc., § 437c, subd. (h).) Similarly, there is no reason to continue the motion due to the assertion of the privilege if it is clear that any testimony the defendant might offer (if not "gagged" by the assertion of the privilege) could not demonstrate the existence of a material triable issue. In such cases the party opposing summary judgment cannot meet the requirement that it provide supporting affidavits or declarations detailing facts that would tend to establish "the existence of controverting evidence" that cannot then be presented. (Cf. *American Continental Ins. Co. v. C & Z Timber Co., supra*, 195 Cal.App.3d at p. 1280.)

 Appellant did not submit any evidence from which it could be inferred that he actually faced any "dilemma" caused by the proper assertion of the privilege against self-incrimination. First, appellant did not make a factual showing in opposition to the motion that he faced potential parallel criminal prosecution.[4] Second, even if the threat of criminal prosecution could be assumed from the evidentiary showing made in support of the motion, or other documents in the court's file, that possibility standing alone

---

[4]Appellant has improperly included "supporting" documents in his record appendix that were not before the trial court in ruling on the motion and may not be relied upon on appeal. Appellant's request that we take judicial notice of additional documents submitted along with his reply brief is denied.

would not suffice to require that the motion be continued. Under Code of Civil Procedure section 437c, subdivision (h), appellant was required to make a showing sufficient to allow the court to conclude that: 1) facts necessary to oppose the motion might exist, but 2) could not then be presented *because of* the proper assertion of the privilege. Appellant made no evidentiary offer in that regard. Appellant's position, in essence, was that the plaintiff in a civil action could not obtain summary adjudication if the defendant simply asserted the privilege due to a potential parallel criminal proceeding. We find this position to be without merit.

3. *Reasonably Equivalent Value.*

■ Appellant's only other contention on appeal is that the trial court failed to realize that appellant might be able to establish a defense if he could show that he gave reasonably equivalent value to Next Century, Inc. (NCI), rather than to PCO. We need not decide the legal issue in the abstract.

It was appellant's burden to submit evidence to demonstrate the existence of a triable issue of fact concerning reasonably equivalent value. But appellant introduced no evidence that he gave reasonably equivalent value to *any* company for *any* of the transfers he received. Appellant introduced no evidence from which it could be inferred that any evidence of reasonably equivalent value given to NCI might even exist. He introduced no evidence tending to indicate that any such evidence of reasonably equivalent value could only be submitted by means of his privileged testimony, rather than, for example, through an expert declaration concerning financial records of the companies (that had already been subjected to discovery and analysis by plaintiff's expert) or through the records themselves.

In summary, the record before the trial court supports summary adjudication. The judgment entered after the receiver's dismissal of his remaining causes of action will therefore be affirmed.

### DISPOSITION

The summary judgment is affirmed. Costs to respondent.

Nott, Acting P. J., and Cooper, J., concurred.