Filed 11/7/13  Freeman v. Priceline.com CA2;/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| MICHAEL FREEMAN, Plaintiff and Appellant, v. PRICELINE.COM, INC., et al., Defendants and Respondents. | B242653 (Los Angeles County Super. Ct. No. BC444510) |


APPEAL from a judgment of the Superior Court of Los Angeles County. Elihu M. Berle, Judge.  Affirmed.

Law Office of Michael Geller Inc., Michael S. Geller and Richard A. Steward for Plaintiff and Appellant.

Skadden, Arps, Slate, Meagher & Flom, Stacy R. Horth-Neubert, Jane Klinger; Sedgwick, Michael R. Davisson and Amand K. Mines for Defendant and Respondent Priceline.com, Inc.

Jill A. Martin for Defendants and Respondents Trump Ruffin Tower I LLC and Trump Ruffin Commercial LLC.


* * * * * *

The trial court granted summary judgment in favor of defendants and respondents Priceline.com, Inc. (Priceline) and Trump Ruffin Tower I LLC and Trump Ruffin Commercial LLC (collectively Trump) on claims for violation of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) (the CLRA) and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) (the UCL) brought by plaintiff and appellant Michael Freeman. The trial court simultaneously denied appellant's motion for summary adjudication. Using Priceline, appellant booked a hotel room at a Trump property in Las Vegas, Nevada, and sought to hold Priceline and Trump liable for allegedly failing to disclose that he would be required to pay a resort fee and that Priceline received a service fee as part of the reservation price.

We affirm. The undisputed evidence established Priceline disclosed that resort fees charged by hotels were excluded from the total charges a customer pays to Priceline and that the sum paid to Priceline included an amount designated as a service fee. In view of the disclosures, there was no triable issue of fact showing that Priceline made a false or misleading representation or omission, or that it included an unconscionable provision in its terms and conditions. Nor was there a triable issue of fact as to whether it engaged in an unfair business practice. The evidence likewise failed to establish any basis to hold Trump liable.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Priceline's Reservation System.*

Priceline is an online travel company that allows customers to make travel arrangements, including hotel reservations, through its Web site. Priceline contracts with hotels to facilitate reservations at rates the hotels determine, in their discretion, whether they will accept. Priceline cannot require a hotel to make a room available at any particular rate. To make reservations, customers have the option of using Priceline's Name Your Own Price (NYOP) service or the Price Disclosed service. Customers can achieve substantial savings through the NYOP service by receiving a deeply discounted rate not available through more traditional channels.

A customer making an NYOP hotel booking on the Priceline Web site requests a hotel by selecting the dates of stay, the general location of the hotel and the quality or "star rating" of the hotel. The customer then names the price he or she is willing to pay for a hotel that fits the selected requirements. After entering that information, the customer is shown a page entitled "Please Review Your Request," a page known internally at Priceline as the "Contract Page," that displays to the customer the details of the request—the desired star level, dates, number of nights and price. At the bottom of the details is an amount designated as "Total Charges," comprised of the offered price multiplied by the number of nights and rooms requested, plus an amount reflecting "Taxes and Service Fees." The "Total Charges" figure is the amount that will be charged to the customer's credit card if the requested price is accepted.

Directly below the amount quoted as "Total Charges," the Contract Page contains a heading in large, bold, blue font entitled "Important Information," followed by five bullet points in the same sized font as the charges. The fourth bullet point states: "The reservation holder must present a valid photo ID and credit card at check-in. The credit card is required for any additional hotel specific service fees or incidental charges or fees that may be charged by the hotel to the customer at checkout. These charges may be mandatory (e.g., resort fees) or optional (parking, phone calls or minibar charges) and are not included in your offer price."

The term "charges" in that bullet point is a hyperlink,[1] and clicking on it leads to a single page captioned "Charges for Taxes and Fees" that provides in part: "Depending on the property you stay at, you may also be charged (i) certain mandatory hotel specific service fees, for example, resort fees (which typically apply to resort type destinations and, if applicable, may range from $10 to $40 per day), energy surcharges, newspaper delivery fees, in-room safe fees, tourism fees, or housekeeping fees and/or (ii) certain optional incidental fees, for example, parking charges, minibar charges, phone calls,

---

[1]    A hyperlink is an image or section of text referring to another document on the Internet and is in essence a system which takes people between Web sites or web pages.

3

room service and movie rentals, etc.  These charges, if applicable, will be payable by you to the hotel directly at checkout.  When you check in, a credit card or, in the hotel's discretion, a debit card, will be required to secure these charges and fees that may incur during your stay.  Please contact the hotel directly as to whether and which charges and service fees apply."

Clicking on the hyperlink phrase "Taxes and Service Fees" just above "Total Charges" on the Contract Page likewise leads to the same page that informs the customer in a separate paragraph:  "In connection with facilitating your hotel transaction, the charge to your debit or credit card will include a charge for Taxes and Fees.  The charge includes an estimated amount to recover the amount we pay to the hotel in connection with your reservation for taxes owed by the hotel including, without limitation, sales and use tax, occupancy tax, room tax, excise tax, value added tax and/or other similar taxes.  In certain locations, the tax amount may also include government imposed service fees or other fees not paid directly to the taxing authorities but required by law to be collected by the hotel.  The amount paid to the hotel in connection with your reservation for taxes may vary from the amount we estimate and include in the charge to you.  The balance of the charge for Taxes and Fees is a fee we retain as part of the compensation for our services and to cover the costs of your reservation, including, for example, customer service costs.  The charge for Taxes and Fees varies based on a number of factors including, without limitation, the amount we pay the hotel and the location of the hotel where you will be staying, and may include profit that we retain."

On the Contract Page, the final sentence toward the bottom of the page provides:  "I have read, accept and agree to abide by Priceline.com's terms and conditions and privacy policy."  The customer must place his or her initials in a box next to this sentence before proceeding to the next screen page, where the NYOP customer enters credit card information and submits an offer.  A reservation cannot be completed unless the customer places his or her initials next to the final sentence.  The phrase "Terms & Conditions" is a hyperlink; clicking on it leads to another page that sets forth the full agreement between Priceline and the customer.  Among the terms and conditions in that agreement are the

4

same paragraphs describing charges and payment for taxes and fees reached through the "charges" and "Taxes and Service Fees" hyperlinks, as well as the statement "[t]he price you name is per night and does not include [P]riceline.com's charge to you for Taxes and Fees."

Once the customer has initialed the Contract Page, he or she can click to the next page to enter credit card information and a billing address, and may submit the request by clicking "Buy My Hotel Room Now." At that point, Priceline attempts to match the customer's offer price with a rate loaded by a participating hotel, taking into account the margin that Priceline seeks to earn by providing its reservation facilitation service.[2] If a hotel matching the NYOP customer's offer price and Priceline's margin requirements is found, Priceline immediately charges the customer's credit card and notifies the customer of the match and the hotel's identity. Once the customer's offer is accepted, the reservation is generally noncancelable and nonrefundable.

### *Appellant's Reservation.*

On March 16, 2010, appellant used Priceline's NYOP service to make a reservation for a hotel in Las Vegas from April 5 to April 7, 2010. He had already scheduled some activities there during that time period. He selected Priceline "because of some ads," and also because he thought he might save some money and was curious about Priceline's NYOP service. He understood that when using the NYOP service, he would not know the identity of the hotel until after his offer was accepted.

Proceeding to Priceline's Web site using the NYOP service, appellant entered Las Vegas as the desired city, entered check-in and check-out dates, and requested one room. After hitting the "search" button, appellant indicated that he desired a five-star hotel and offered a price of $89 per night. It was appellant's general practice to read all the

---

[2]     Certain documents containing information concerning Priceline's pricing methodologies and rates were filed under seal. The parties have neither cited nor asked us to rely on any of the information filed under seal to resolve this appeal, and we have found no reason to rely on those documents for the purpose of addressing summary judgment.

obvious terms of any transaction in which he was involved.  In this instance, before submitting his bid for a hotel room, appellant reviewed the "Total Charges" on Priceline's Contract Page, including the amount of the "Taxes and Service Fees" charge. He also read the bullet points identified under "Important Information" on the Contract Page.  He read and placed his initials next to the sentence on the Contract Page stating that he had read and agreed to abide by Priceline's terms and conditions.  Appellant then submitted his credit card information in order to pay the $209.68 "Total Charges" identified by Priceline.

The Trump International Hotel Las Vegas (Trump Hotel) accepted appellant's offer price through the NYOP service.  Had appellant paid the standard room rate, it would have been $109 for the first night and $119 for the second.  When appellant checked into the Trump Hotel on April 5, 2010, a clerk requested that he provide a credit card to cover a $15 per night resort fee, plus an occupancy tax, which would be charged at checkout.  It is the Trump Hotel's standard practice to charge a resort fee to all guests, regardless of how the guest made the reservation.  Appellant paid the resort fee and did not ask that it be waived.  Setting aside the issue of the resort fee, appellant's stay at the Trump Hotel satisfied his expectations for a five-star hotel.

### *Pleadings and Summary Judgment.*

Appellant filed the operative first amended complaint in September 2011, alleging causes of action for violation of the CLRA and the UCL.  He alleged that Priceline and Trump conspired with one another to conceal from him that he would be required to pay the $15 per night resort fee, and that Priceline misrepresented the terms of the transaction by keeping for itself part of the sum designated as "Taxes and Service Fees."  Priceline and Trump answered separately, generally denying the allegations and asserting multiple affirmative defenses.

In October 2011, appellant moved for summary adjudication on liability, offering his own declaration, a DVD of Priceline commercials, screen shots of Priceline's and Trump's Web sites, correspondence confirming his reservation and copies of Clark County, Nevada ordinances as evidence in support of the motion.  Thereafter, in

6

December 2011 Priceline and Trump filed separate motions for summary judgment. Priceline asserted the undisputed evidence showed it affirmatively disclosed to appellant that he may be required to pay a mandatory resort fee directly to a hotel in connection with a reservation made through Priceline and that it disclosed "Taxes and Service Fees" included an amount retained by Priceline as compensation for its services. In support of its motion, Priceline offered the declaration of senior vice-president for hotels Timothy W. Gordon; screen shots of its Web site including hyperlinks; and counsel's declaration attaching copies of discovery responses and an order in another matter. Trump made similar arguments, adding that it could not be held liable as a matter of law given its undisputed role in the transaction. It submitted the declaration of Brian Baudreau, president and managing director of Trump Hotel; and counsel's declaration attaching discovery responses.

Priceline and Trump opposed appellant's motion and filed evidentiary objections. In turn, appellant opposed Priceline's and Trump's motions.

The trial court heard the motions on March 2, 2011, and thereafter entered an order granting Priceline's and Trump's summary judgment motions and denying appellant's summary adjudication motion; the order also granted judgment in favor of Priceline and Trump. At the hearing, the trial court stated that "the gravamen of plaintiff's complaint first is that the additional resort fee is a hidden additional charge that increases the nightly room rate significantly and that the service fee charged by Priceline is not adequately disclosed." After summarizing the undisputed evidence of the disclosures provided on Priceline's Web site, the trial court found "that the disclosures by Priceline are sufficient to meet Priceline and the Trump defendants' initial burden because this evidence shows that Priceline did, in fact, make disclosures regarding the possible additional mandatory charges, which may expressly include resort fees, as well as disclosing that Priceline charges a service fee." The trial court further found that appellant's evidence that he did not intend to stay at a "resort" destination and the absence of information concerning the amount of the fee Priceline would charge was insufficient to overcome the moving parties' showing. The trial court further found the

7

undisputed evidence showed that the resort fee and the service fee were neither procedurally nor substantively unconscionable. Finally, the trial court concluded that undisputed evidence showing that none of the disclosures made by Priceline were likely to mislead supported summary judgment on appellant's UCL claim. The trial court added that appellant's UCL claim failed for the additional reason that he could have avoided any injury by booking directly with a hotel that did not charge a resort fee or using a reservation system that did not include a service fee. Subsequently, the trial court entered an order overruling in part and sustaining in part Priceline's and Trump's evidentiary objections.

This appeal followed.

## DISCUSSION

Appellant contends the trial court erroneously granted summary judgment because he demonstrated there were triable issues of fact whether Priceline's advertisements and its Web site disclosures violated the CLRA and the UCL, and whether Trump conspired with Priceline in connection with its violations. We find no merit to appellant's contentions.

### I. Standard of Review.

Summary judgment is warranted when the moving party shows by admissible evidence that the "action has no merit or that there is no defense" thereto. (Code Civ. Proc., § 437c, subd. (a).) To satisfy this burden, a moving defendant is not required to "conclusively negate an element of the plaintiff's cause of action. . . . All that the defendant need do is to 'show[] that one or more elements of the cause of action . . . cannot be established' by the plaintiff. [Citation.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. omitted.)

Once the defendant makes this showing, the burden shifts to the plaintiff to show the existence of a triable issue of material fact, which must be demonstrated through specific facts based on admissible evidence and not merely the allegations of the pleadings. (Code Civ. Proc., § 437c, subd. (p)(2); *Borders Online v. State Bd. of Equalization* (2005) 129 Cal.App.4th 1179, 1188.) "[I]n order to avert summary

8

judgment the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing. [Citations.]  For this purpose, responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.  [Citations.]" (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 162–163.)

We review a grant of summary judgment de novo, independently examining the evidence and determining whether the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 404; *Peart v. Ferro* (2004) 119 Cal.App.4th 60, 69.)  We limit our review of the trial court's ruling to the evidence presented in the supporting and opposing papers submitted to the trial court, except that to which objections have been made and sustained, and the uncontradicted inferences reasonably deduced from the evidence.  (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65–66; *Artiglio v. Corning Inc.* (1998) 18 Cal.4th 604, 612; *Fisher v. Gibson* (2001) 90 Cal.App.4th 275, 282.)

While we independently review a grant of summary judgment, we review the trial court's evidentiary rulings for an abuse of discretion.  (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)  But in order to demonstrate an abuse of discretion, an appellant must affirmatively challenge the evidentiary rulings on appeal.  In other words, the asserted erroneous evidentiary rulings must be identified "as a distinct assignment of error" and be supported by analysis and citation to authority.  (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114.)  When an appellant does not challenge the trial court's sustaining objections to evidence offered in connection with a summary judgment motion, "any issues concerning the correctness of the trial court's evidentiary rulings have been waived.  [Citations.]" (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014– 1015.)

9

**II. The Trial Court Properly Granted Summary Judgment on Appellant's CLRA Claim.**

### A. Deceptive Acts.

Civil Code section 1770, subdivision (a) makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." (See *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 834.) A deceptive act includes the misrepresentation or omission of a material fact. (*McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 185.) For an omission to be actionable under the CLRA, it must be contrary to a representation actually made by the defendant, or the defendant must have had a duty to disclose the omitted fact. (*Daugherty v. American Honda Motor Co., Inc., supra*, at p. 835; see also *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1276.) Moreover, the plaintiff asserting a CLRA claim must show the misrepresentation or omission was likely to deceive a reasonable consumer. (*Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1361–1362.)

In his complaint, appellant alleged that Priceline's television advertisements were deceptive and misleading in that they did not disclose the price offered by a customer through Priceline's NYOP service would not be the total price for the room. He further alleged that the resort fee and service fee information on Priceline's Web site was misleading because it was "[b]uried deep in the multiple screen reservation process, in very small print, without any emphasis." He alleged that Priceline's conduct in this regard violated Civil Code section 1770, subdivision (a)(5) ("[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have") and subdivision (a)(9) ("[a]dvertising goods or services with intent not to sell them as advertised").

In support of their summary judgment motions, Priceline and Trump offered evidence of the steps a customer must undertake in order to make a reservation under the

10

NYOP system, evidence of the information available to a customer making an NYOP reservation, and deposition testimony from appellant that he read the information presented to him and agreed to abide by Priceline's terms and conditions when he made his reservation. Appellant did not dispute Priceline's and Trump's material facts. At the summary judgment hearing, the trial court summarized the undisputed evidence of appellant's reservation process, including identifying the Priceline Web site pages appellant necessarily saw that described the customer's potential payment of a resort fee and Priceline's retention of compensation for its services.

On the basis of this evidence, the trial court concluded that Priceline and Trump satisfied their burden on summary judgment by showing they made sufficient disclosures: "The language of the Contract Page clearly stated that plaintiff was required to present a credit card upon check in, and that credit card is required for any additional hotel specific service fees, some of which may be mandatory. The disclaimer expressly included resort fees as just one example of a mandatory charge, and there is no evidence that Priceline ever represented that resort fees were the only possible mandatory charge or that the charge was only applicable to hotels that Priceline itself has described as a 'resort' type of hotel. [¶] It would be impossible for Priceline to notify a customer at the time of signing on whether a hotel will require any mandatory fee, including a resort fee, because neither Priceline, nor the customer, would know if any hotel meets the customer's parameters until after the credit information is entered on the page following the Contract Page. [¶] Additionally, the Contract Page specifically included an estimate for Taxes and Service Fees, which clearly indicates that Priceline may charge an additional service fee. [¶] These disclosures were clearly written and conspicuously placed on the Contract Page and included hyperlinks to more detailed explanations of each of the charges at issue. There are thus no representations regarding the possibility of additional mandatory charges that are likely to deceive a customer, and Priceline also disclosed that it charges a service fee."

The trial court concluded that Priceline and Trump met their burden to show appellant could not establish an essential element of his claim, as the undisputed evidence

11

showed they did not engage in a deceptive act or make a misrepresentation in violation of Civil Code section 1770, subdivisions (a)(5) and (a)(9). It further concluded that appellant's evidence failed to create a triable issue of material fact. It expressly concluded that appellant's declaration in which he averred he did not specify a "resort" destination and was unaware of Priceline's service fee after viewing its television commercials and making his reservation failed to establish a triable issue in view of the undisputed evidence of Priceline's disclosures. The trial court stated: "As the evidence discussed previously by the court shows, Priceline did, in fact, make the disclosures regarding additional mandatory charges, including the possibility of resort fees, as well as disclosing a service fee. There is no evidence that Priceline represented that a mandatory fee could only be charged for a resort-type destination as defined by Priceline and the hyperlink explains that resort fees typically apply at a resort-type destination, but does not limit the fees to only resort-type destinations. [¶] Plaintiff has also failed to provide any authority that would require Priceline to disclose the amount of the mandatory fee."

On appeal, appellant has likewise failed to demonstrate the existence of a triable issue of material fact. He argues the trial court failed to take into account the omissions in Priceline's television commercials in concluding that Priceline made adequate disclosures. The record belies his argument. In ascertaining whether appellant's evidence raised a triable issue of fact, the trial court expressly relied on appellant's evidence that Priceline's commercials omitted information about additional fees. It concluded this omission was immaterial in view of undisputed evidence showing a Priceline customer would necessarily receive the multiple disclosures contained on Priceline's Web site before making a reservation. We, too, have viewed the commercials and find they fail to raise a triable issue. The three commercials—each of which display scenarios that include elements of fantasy—contain limited information about Priceline's services and in no way enable a customer to bypass or otherwise avoid the multiple disclosures on Priceline's Web site. There are no parallels between the undisputed evidence here and the cases cited by appellant in support of his argument the commercials were deceptive. (See *Brockey v. Moore* (2003) 107 Cal.App.4th 86, 100

12

[evidence at jury trial that the non-lawyer defendant advertised he provided "Legal Aid" services, represented he had a lawyer on staff when he did not and advertised in Spanish though he had no Spanish-speaking employees supported verdict finding CLRA violation that was not challenged on appeal]; *Brewer v. Indymac Bank* (E.D. Cal. 2009) 609 F.Supp.2d 1104, 1123–1124 [no CLRA claim involved].)

Appellant next contends he raised a triable issue of fact as to whether the disclosures on Priceline's Web site were misleading because many of them were contained within hyperlinks. To the contrary, hyperlinks have been held to convey adequate and unambiguous notice in a variety of situations. (E.g., *Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 58 ["Using a summary notice that directed the class member wanting more information to a Web site containing a more detailed notice, and provided hyperlinks to that Web site, was a perfectly acceptable manner of giving notice" of a proposed class action settlement]; *Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 588 ["We perceive no unfairness in Net2Phone's requirement that certain contractual terms must be accessed via hyperlink, a common practice in Internet business"]; *Swift v. Zynga Game Network, Inc.* (N.D. Cal. 2011) 805 F.Supp.2d 904, 912 [binding agreement to arbitrate created where "[p]laintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept'"]; *Ticketmaster L.L.C. v. RMG Techs., Inc.* (C.D. Cal. 2007) 507 F.Supp.2d 1096, 1107 [Ticketmaster Web site providing its use was subject to "Terms of Use" that was a hyperlink to the full terms of use and providing that user agreed to abide by those terms by continuing past that page held sufficient to show Ticketmaster was "highly likely to succeed in showing that Defendant received notice of the Terms of Use and assented to them by actually using the website"].) Here, in addition to the undisputed evidence of the disclosures contained

13

within the hyperlinks, the evidence further showed appellant read and agreed to abide by Priceline's hyperlinked terms and conditions.[3]

Appellant finally contends it was error to grant summary judgment because whether Priceline and Trump engaged in a deceptive act involves a question that is factual in nature. He cites cases characterizing as an issue of fact whether a misrepresentation or omission is material (*Stearns v. Ticketmaster Corp.* (9th Cir. 2011) 655 F.3d 1013, 1022) and whether an affirmative representation is misleading (*Chacanaca v. Quaker Oats Co.* (2010) 752 F.Supp.2d 1111, 1125–1126). But here the question was whether appellant raised a triable issue showing that Priceline and Trump omitted to disclose specific information concerning the possibility of a resort fee and the inclusion of a service fee. As explained in *Daugherty v. American Honda Motor Co., Inc., supra,* 144 Cal.App.4th at page 835, "although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Here, appellant offered no evidence to show either that Priceline's disclosures were contrary to other information it provided or that Priceline concealed any information it had a duty to disclose. Accordingly, the trial court properly concluded there were no factual issues remaining for trial in connection with appellant's CLRA claims under Civil Code section 1770, subdivisions (a)(5) and (a)(9).

---

[3] Appellant also maintains he raised a triable issue of fact as to the misleading nature of Priceline's disclosures by showing that the local ordinance in Clark County where the Trump Hotel is located classified resort fees as "rent," thereby suggesting such fees should be collected as part of the initial offer price. He ignores, however, that the trial court sustained Priceline's evidentiary objection to this information. Appellant has not challenged any evidentiary ruling on appeal. "[T]he appellant has the burden of pointing out any evidentiary errors that prejudiced his position. Failure to do so constitutes a waiver on appeal of any possible error in this respect. [Citations.]" (*Hayman v. Block* (1986) 176 Cal.App.3d 629, 640.) Accordingly, appellant has forfeited any argument concerning the effect of local ordinances.

14

### B. *Unconscionability.*

Appellant further alleged that Priceline and Trump violated Civil Code section 1770, subdivision (a)(19) by "[i]nserting an unconscionable provision in the contract." The court in *Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 808, described what must be shown to satisfy the CLRA: "Unconscionability has both a procedural and a substantive element. [Citation.] Both elements must be present for a court to invalidate a contract or clause, although the degree to which each must exist may vary. [Citation.] [¶] The procedural element of unconscionability focuses on two factors: oppression and surprise. [Citation.] '"Oppression" arises from an inequality of bargaining power which results in no real negotiation and "an absence of meaningful choice."' [Citation.] '"Surprise" involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms.' [Citation.] [¶] The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create '"overly harsh"' or '"one-sided"' results as to '"shock the conscience."' [Citations.]" Unconscionability is a question of law. (*Ibid*.)

The trial court found the undisputed evidence failed to establish any unconscionability. It ruled "the disclosures are clearly written and conspicuously placed on the Contract Page so the element of surprise was lacking. [¶] Plaintiff also has numerous other sources for booking a hotel room for vacation. The terms are also not substantively unconscionable because nothing in the disclosures shocks the conscience." We agree with the trial court that, as a matter of law, Priceline's disclosures were neither procedurally not substantively unconscionable.

*Aron v. U-Haul Co. of California, supra,* 143 Cal.App.4th 796 is instructive. There, U-Haul allegedly had a practice renting its trucks partially fueled, offering them to a customer with the fuel level remaining from the previous customer. It would charge each customer a $20 fueling fee, plus $2 per gallon for fuel that it estimated from the fuel gauge to have been used, but not replaced, by each customer. It also declined to reimburse customers in the event they returned a truck with more fuel than initially

15

provided. (*Id.* at pp. 800–801.) The plaintiff alleged these practices were both procedurally and substantively unconscionable and violated Civil Code section 1770, subdivision (a)(19). (*Aron v. U-Haul Co. of California, supra,* at p. 809.) Finding the allegations were properly stricken, the appellate court determined the claim of procedural unconscionability failed because there was no surprise; though the plaintiff may have expected a full fuel tank at the time of rental, the fuel obligations imposed on him were clearly specified in the contract. (*Ibid.*) Moreover, there was no oppression because the plaintiff could have rented a truck from another company. (*Ibid.*) With respect to substantive unconscionability, the court determined that while the practices may have been unreasonable, they did not in any way shock the conscience. (*Ibid.*)

The undisputed evidence mandates the same result here. Though appellant argues he was surprised by the payment of a resort fee and a service fee, both were clearly and conspicuously disclosed. Moreover, appellant could have reserved a hotel room through multiple other sources. Finally, nothing about the content or manner of Priceline's disclosures shocks the conscience. Summary judgment was properly granted on appellant's CLRA claim under Civil Code section 1770, subdivision (a)(19).

## III.    The Trial Court Properly Granted Summary Judgment on Appellant's UCL Claim.

In his second cause of action, appellant alleged the same conduct—the alleged nondisclosure of the possibility of a resort fee and the inclusion of a service fee—constituted an unfair business practice within the meaning of Business and Professions Code section 17200[4] and false advertising within the meaning of section 17500. In consumer cases, courts tend to look at three factors to ascertain whether a business practice is unfair: "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.

---

[4]    Unless otherwise indicated, further statutory references are to the Business and Professions Code.

[Citation.]"  (*Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 597.)  The failure to satisfy any one of the factors is fatal to a UCL claim.  (*Daugherty v. American Honda Motor Corp., Inc., supra,* 144 Cal.App.4th at p. 839.)

The trial court here found Priceline and Trump showed the last element could not be established, and appellant failed to raise a triable issue as to whether he suffered an unavoidable injury:  "[T]he injury which plaintiff alleges could have been avoided because all the unfair acts were conspicuously disclosed, as previously discussed, and plaintiff had numerous other means of booking a hotel room for vacation.  Plaintiff could have avoided the fees charged by booking through Priceline by using another provider and could have booked directly with a hotel that did not charge a resort fee.  He could have used other services that did not have the extra service fee."  The undisputed evidence established that appellant was under no compulsion to use Priceline's NYOP service.  Rather, appellant had planned some activities in Las Vegas, and decided to use Priceline to make a hotel reservation after he saw its television commercials and because he was curious about the service and thought he might save some money.  Appellant offered no evidence supporting the requisite element of unavoidable injury.  The claimed harm here is no different than that alleged in *In re Ins. Installment Fee Cases* (2012) 211 Cal.App.4th 1395, 1419, where the court held a demurrer was properly sustained to a UCL claim based on insurance company's practice to charge an installment payment service fee because, among other reasons, "any policyholder can avoid the 'harm' by opting to pay the premium in a lump sum rather than in installments."  (Accord, *Davis v. Ford Motor Credit Co. LLC, supra,* 179 Cal.App.4th at p. 598 ["the alleged injury here, namely, the imposition of successive late fees for successive months, reasonably could have been avoided had Davis made his monthly payments timely, or within the 10-day grace period, in accordance with his obligations under the contract"].)

Appellant also alleged that Priceline and Trump violated section 17500.  "California's false advertising law prohibits advertisements that are 'untrue or misleading.'  (§ 17500.)  To establish a violation, 'it is necessary only to show that "members of the public are likely to be deceived."'  [Citations.]"  (*Lopez v. Nissan North*

*America, Inc.* (2011) 201 Cal.App.4th 572, 595.) The trial court concluded this claim suffered from the same deficiencies as the CLRA claim, stating that "defendants have met their initial burden by showing that none of the disclosures made by Priceline were likely to mislead and plaintiff has failed to offer any evidence raising a triable issue of material fact."

In asserting the trial court erred in this regard, appellant relies exclusively on *People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119, a case involving facts markedly different from the undisputed evidence here. In that case, car rental agency employees sold collision damage waivers (CDW) to customers, affirmatively representing the CDW was insurance that would protect the customer against his or her own negligence and liability in the event of an accident, and would limit responsibility for any damage to $500. (*Id*. at p. 123.) In truth, the rental agreements made customers absolutely liable for any damage, and the CDW was not insurance and did not provide protection from liability for a customer's own negligence. (*Ibid*.) Instead, the CDW only limited the damages the car rental company could seek from a customer in the event the customer was negligent. (*Ibid.*) The appellate court held that substantial evidence supported the trial court's statement of decision finding that these practices violated sections 17200 and 17500, as, "[t]he testimony of former customers, rental agents, and even the testimony of defendants' executives, demonstrate a history of false and misleading business practices and training procedures which had the actual, if not intended, effect of confusing the car rental public about the liability protection afforded by CDW and deceived customers into purchasing CDW under false pretenses." (*People v. Dollar Rent-A-Car Systems, Inc., supra,* at p. 129.)

Here, in sharp contrast, appellant offered no evidence to show that any Priceline employees or materials provided representations that were contrary to the information plainly and conspicuously provided on Priceline's Web site concerning the payment of a resort fee and a service fee. Because there was no evidence creating a triable issue as to whether a customer was likely to be deceived, the trial court properly granted summary judgment on this claim as well.

18

**IV.     The Trial Court Properly Granted Summary Judgment in Favor of Trump.**

The trial court granted summary judgment in favor of Trump for the same reasons it granted summary judgment in favor of Priceline, finding no need to address any independent arguments raised by Trump.  On appeal, appellant contends that he raised a triable issue of fact as to whether Trump should be held liable as a civil conspirator.  Our conclusion that summary judgment was properly granted on appellant's CLRA and UCL claims likewise disposes of any civil conspiracy claim.  "[A] civil conspiracy does not give rise to a cause of action unless an independent civil wrong has been committed." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1062.)  Stated another way, "'[t]here is *no separate tort* of civil conspiracy, and there is *no civil action* for conspiracy to commit a recognized tort unless the *wrongful act* itself is committed and damage results therefrom.' [Citations.]"  (*Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574.)  Appellant's inability to raise a triable issue of fact supporting his CLRA and UCL claims is fatal to his assertion of a civil conspiracy.[5]

---

[5]     Appellant raises the denial of his motion for summary adjudication as a separate claim of error.  It necessarily follows from our discussion above that because the trial court properly granted Priceline and Trump summary judgment on the claims against them, the trial court did not err in denying appellant's motion for summary adjudication against Priceline and Trump on those same claims.

19

## DISPOSITION

The judgment is affirmed.  Priceline and Trump are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J. *
                                FERNS

We concur:


_____, Acting P. J.
          ASHMANN-GERST


_____, J.
          CHAVEZ

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.